OPINION OF THE COURT
Jones, J.
When a contract is made for the future transfer of beneficial interest in stock and no provision is made therein by the buyer and seller as to which shall be entitled to receive regular dividends declared before the purchase price is paid and delivery of the stock certificates made, such dividends remain the property of the seller.
On March 31 and April 5, 1967 Deering Milliken, Inc., executed agreements for the purchase from defendants, executors under the will of Susan Vanderpoel Clark and the Clark Estates, Inc., of some 480,000 shares of stock of Albany Felt Company. Under the first agreement, with the executors, a minimal payment was to be made at the time the contract was signed, a partial payment on May 1, 1967 and the substantial balance on August 1, 1967. Under the April agreement, with Clark Estates, payment was to be made on such date between May 1 and August 1, 1967 as might be specified by the seller. Under each contract delivery of the stock certificates was to take place when the total purchase price was paid. The contracts also included as a condition to the buyer’s obligation of payment a provision that the buyer should have satisfied itself from an evaluation of Albany Felt’s business and financial condition that the basis on which the transaction was to be consummated was warranted. Absent from both contracts was any provision as to which party would be entitled to dividends declared by Albany Felt between the dates of the agreements and the dates of transfer of the shares.
On May 24, 1967 the corporation declared a regular quarterly dividend payable on July 1 to stockholders of record on June 16. Payment of the purchase price and delivery of the stock certificates held by Clark Estates took place on June 19, 1967; final payment and delivery of the stock certificates held by the executors was made on August 1. The sellers’ rejection of the buyer’s demand under both contracts for delivery to it of the dividends distributed July 1 gave rise to the present litigation.
*549 In the circumstances of this case, we agree with the Appellate Division that the dividend declared on May 24 belonged to the sellers.
As in most contract questions, the intention of the parties, if manifested, would have controlled. In the March and April agreements between the parties, however, there were no express provisions with respect to entitlement to interim dividends, and no extrinsic evidentiary proof of the intention of the parties as to that subject has been tendered. That being so, the resolution of the resulting ambiguity by construction of the instruments is for determination by the court on the present cross motions for summary judgment (Hartford Acc. & Ind. Co. v Wesolowski, 33 NY2d 169, 172; Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 291).
Critical to the determination whether buyer or sellers were entitled to the May dividend is the question whether present sales—current transfers of substantial beneficial interest—or only agreements to make future sales were manifested by the execution of the contracts of March 31 and April 5, 1967. A purchaser of stock acquires "by a contract of present sale a right to the benefits which may accrue on the stock bought, and that right is, for convenience, called the 'beneficial ownership’ of the stock” (Broderick v Alexander [Kahn], 268 NY 306, 309). A different result attends the execution of a contract to make a sale in the future. "In the absence of an agreement to the contrary, the buyer under an executory contract to sell stock is not entitled to dividends until the legal title to the stock has passed to him, which is not until delivery is made to him or is due to him and is offered to be made, unless there is something in the contract specifying or implying a contrary intention. * * * Where there is a sale of stock in praesenti, but the date of delivery and payment is postponed, the vendee is entitled to all dividends declared between the date of the agreement and the date of closing to the purchaser.” (11 Fletcher Cyclopedia Corporations [Perm ed, 1971], § 5378.)
Looking to the terminology used by these parties in their agreements, in addition to provisions for future dates for payments of the purchase price and deliveries of the stock certificates, we find: "Seller will sell to Buyer”; "Buyer * * * will purchase such shares from Seller”; the seller "agrees to cause to be sold to” the purchaser; the purchaser "agrees to buy such shares”; reference to "shares to be sold”—all termi *550 nology looking to future occurrences and inconsistent with a present transfer of beneficial ownership of the stock. Of similar import are the express conditions which precluded the subjection of the buyer to any obligation to pay until it had satisfied itself as to the existence of sufficient warrant in the financial condition of Albany Felt for the transactions described in the contracts. In view of that condition, it might have come about that the buyer would never be bound to pay. We conclude that, while at the time of execution of the March and April agreements Deering Milliken acquired certain enforceable rights with respect to a sale of the Albany Felt stock, there was then no present sale and no transfer of such beneficial interest as to carry with it the right to the regular quarterly dividend declared May 24, 1967. Defendants, as the actual and beneficial owners of the shares when the dividend was declared, were entitled to the distribution (Ford v Snook, 205 App Div 194, affd 240 NY 624; Hopper v Sage, 112 NY 530).
The extrinsic evidence bearing on the intention of the parties with respect to the timing of the completion of the sale by the executors (to be distinguished from extrinsic evidence with respect to the right to dividends—of which there is none) is consistent with the construction we have reached. Included among the papers offered by the buyer on its motion for summary judgment is an affidavit and an examination before trial of its president by whom it was represented in the stock transaction. This evidence discloses that the executors desired to defer the sale of stock for a tax advantage to them.* The desire of the executors in this regard was communicated to the buyer’s president and with that knowledge the parties executed the agreements, drafted on behalf of the sellers. Also included in the buyer’s moving papers is a letter from the sellers’ counsel, who had been involved in the discussions concerning the text of the instruments, referring to the executors’ rejection of a proposal by the buyer’s attorney that "the agreement be cast in terms of a present sale and purchase”.
The cases of Currie v White (45 NY 822) and Johnson v Underhill (52 NY 203), relied on by Deering Milliken as support for its claim to the disputed dividend, are inapplicable. In each of those cases it was found that a present sale and *551 transfer of beneficial interest had taken place; in the Johnson case the issue was only what consequence attended the failure to have effected a change in record ownership on the books of the corporation. So too, the trilogy of Broderick cases arising in the context of the collapse of the Bank of United States in 1930 (Broderick v Aaron, 264 NY 368; Broderick v Alexander [Kahn], 268 NY 306, supra; Broderick v Adamson [Greif], 270 NY 260), is not supportive of Deering Milliken’s position. Those cases also dealt with the rights and liabilities attendant on present purchases and sales of stock, made in those instances through brokers on the open market, and with the degree of specification and identification necessary to effect a transfer of beneficial interest for the purpose of fixing the statutory liability of stockholders of a bank in liquidation.
Cases cited involving extraordinary or irregular dividends declared at or near the time of the striking of the agreement, which served to siphon off corporate assets and thereby unexpectedly to impair the bargain, are not in point; here it is undisputed that the dividend declared May 24, 1967 was a predictable regular, quarterly dividend of Albany Felt Company.
In reaching our decision we have not considered Rules of the New York Stock Exchange which have not been claimed or shown to be applicable to this transaction concluded directly between the prospective buyer and sellers.
Finally, because the Appellate Division took note of the fact that no provision for interest payments on the purchase price of the stock had been included in either agreement, we observe that we attach no significance to this omission. Although the inclusion of an obligation for payment of interest by the buyer from the date of the contract’s execution would have supported a claim of a present sale (Currie v White, 45 NY 822, supra), its absence does not necessarily lead to a contrary result. An acceptable—perhaps, to a tax-conscious seller, even desirable—substitute might be a greater purchase price.
Inasmuch as the agreements executed March 31 and April 5, 1967 were contracts for future sales of Albany Felt stock, rather than for a present change of beneficial ownership, it was proper to grant defendants’ cross motion for summary judgment dismissing plaintiff’s claim for dividends declared after the date of the contracts and before the transfer of beneficial interest in the stock.
*552 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 It appears to be undisputed that the decedent had died on January 25, 1967. Thus, any sale within six months thereafter would have exposed the decedent’s estate to taxation of capital gains on a short-term basis.